UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | ACTION NO. 2:11-CV-2797 |
| | ) | |
| DARRELL L. CASTLE; JAMES R. BROWN; JASON C. AMERINE; JEREMY M. HART; MARK E. MEYER; CASTLE LAW OFFICES OF KANSAS CITY; and DONALD SKUBAL | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR RESCISSION AND**
**<u>DECLARATORY JUDGMENT</u>**

Colony Insurance Company ("Colony") files this Complaint for Rescission and Declaratory Judgment.

## PARTIES

1.

Colony, plaintiff herein, is incorporated under the laws of Virginia with its principal place of business in Virginia.

2.

Darrell L. Castle, a defendant herein, is a resident of Tennessee. He may be served at 2586 Hocksett Cove, Germantown, Tennessee 38139. Mr. Castle seeks coverage under a Colony policy for liability claims asserted against him. Once served, he will be subject to the personal jurisdiction of this Court.

3.

James R. Brown, a defendant herein, is a resident of Missouri. He may be served at 34 Arbor Point Court, St. Charles, Missouri 63303. Mr. Brown seeks coverage under a Colony policy for liability claims asserted against him. Once served, he will be subject to the personal jurisdiction of this Court.

4.

Jason C. Amerine, a defendant herein, is a resident of Missouri. He may be served at 2501 Blazing Star Place, Lee's Summit, Missouri 64081. Mr. Amerine seeks coverage under a Colony policy for liability claims asserted against him. Once served, he will be subject to the personal jurisdiction of this Court.

5.

Jeremy M. Hart, a defendant herein, is a resident of Kansas. He may be served at 11120 Whispering Lane, Kansas City, Kansas 66109. Mr. Hart seeks

coverage under a Colony policy for liability claims asserted against him. Once served, he will be subject to the personal jurisdiction of this Court.

6.

Mark E. Meyer, a defendant herein, is a resident of Missouri. He may be served at 606 N.E. Applewood St., Lee's Summit, Missouri 64063. Mr. Meyer seeks coverage under a Colony policy for liability claims asserted against him. Once served, he will be subject to the personal jurisdiction of this Court.

7.

Castle Law Office of Kansas City, P.C. ("Castle Law") is a law firm incorporated under the laws of Missouri with its principal place of business in Missouri. Castle Law can be served through its registered agent, Joseph E. Rebman at 8000 Maryland Avenue, Suite 1600, St. Louis, MO 63105. Castle Law seeks coverage under a Colony policy for liability claims asserted against it. Once served, Castle Law will be subject to the personal jurisdiction of this Court.

8.

Donald Skubal ("Skubal"), a defendant herein, is an individual residing in Kansas. He may be served at 610 South Tiger, Morland, Kansas 67650. Mr. Skubal asserts liability claims against each of his co-defendants in this action and

is joined properly so that he will be bound by the coverage rulings of this Court. Once served, he will be subject to the personal jurisdiction of this Court.

**JURISDICTION AND VENUE**

9.

There is complete diversity of citizenship between plaintiff and defendants.

10.

The amount in controversy exceeds $75,000.

11.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 2201.

12.

There is an actual controversy with respect to Colony's obligations, if any, pursuant to an insurance contract that was delivered in Shelby County, Tennessee that lies in the Western Division of this Court. In addition, defendant Castle resides in Shelby County, Tennessee. Venue is therefore proper under 28 U.S.C. §§ 1391(a)(1) and (2).

**UNDERLYING LITIGATION**

13.

Skubal filed a legal malpractice lawsuit against Darrell L. Castle, James R. Brown, Jason C. Amerine, Jeremy M. Hart, Mark E. Meyer, and Castle Law (collectively the "Castle Law Firm Defendants") in the Seventeenth Judicial District, District Court of Graham County, Kansas, Case No. 2011-CV-02, a complete copy of which is attached as Exhibit A. ("Legal Malpractice Action"). Skubal alleges the Law Firm Defendants are liable for mishandling his claims that various medical care providers failed to properly diagnose and treat his physical symptoms such that he is paralyzed as a result. He asserts that the Law Firm Defendants failed to bring suit against the culpable medical care providers and caused the dismissal of all the providers against whom suit had been brought.

14.

A medical malpractice lawsuit was initially filed on Skubal's behalf due to the alleged negligence of Mirza Baig. M.D. and P.J. Reddy, M.D. in a case styled Donald Skubal v. Hays Orthopedic Clinic, et al. in the Twenty Third Judicial District, Ellis County, Kansas, Case No. 05-CV-187. Skubal designated Terrance Piper, M.D. as his sole expert after which he dismissed Dr. Reddy voluntarily.

Thereafter, the entire lawsuit was dismissed on the terms that no other expert would be designated in a re-filed lawsuit absent good cause shown.

15.

Skubal re-filed his claims against Dr. Baig and his clinic in a case styled Donald Skubal v. Hays Orthopedic Clinic, P.A. and Mirza Baig. M.D., Twenty Third Judicial District, Ellis County, Kansas, Case No. 08-CV-28. By court order, Skubal obtained an extension of time to serve Dr. Baig through June 27, 2008. Defendants Hart and Meyer knew or should have known that Dr. Baig needed to be served by that date to avoid a dismissal of claims against Dr. Baig beyond the limitations period for pursuing relief.

16.

Skubal's counsel attempted to serve Dr. Baig on June 9, 2008 via certified mail at an address in Virginia (7501 Little River Turnpike 104, Annandale, VA 22003) under a Kansas procedure that allows out-of-state residents to be served at their "dwelling house or usual place of abode." See K.S.A. §§ 60-308(e) and 60-304(a). The return receipt was signed by someone other than Dr. Baig. In addition, Skubal's counsel possessed a document showing that the Virginia address was a medical office and not a residence. In addition, Skubal's counsel caused a

Deputy Sheriff of Fairfax County, Virginia to attempt personal service on Dr. Baig at the address in Virginis.

17.

Skubal's counsel knew or should have known that the address in Virginia was a commercial location such that the provisions of Kansas law for service by certified mail on Dr. Baig as an out-of-state resident had not been met.

18.

No extension of time was requested prior to June 27, 2008 to serve Dr. Baig despite the absence of evidence that Dr. Baig had actual knowledge of the lawsuit on or before June 27, 2008 when the deadline expired to effect service.

19.

By order of February 20, 2009, the Court dismissed the claims against Dr. Baig for lack of service of process. Under Kansas law, the Court could not extend the time further absent proof that Dr. Baig had actual knowledge of the lawsuit.

20.

In the same order, the Court declined to enter summary judgment for the sole remaining defendant (Hays Orthopedic). Despite the dismissal of Dr. Baig, the Court ruled that Hays Orthopedic could be liable under Kansas law if there was negligence by an employee who was not insured by the Kansas Health Care

Stabilization Fund.  The Court acknowledged that the terms of the dismissal of the first action limited Skubal to designating the same expert and that designation did not include an opinion as to employees of Hays Orthopedic.  The Court declined to enter summary judgment, however, finding "it is unknown whether the Plainitff will ask for leave to designate additional experts who would testify as to the separate acts of negligence of non-Fund covered employees or others, and whether this Court would grant leave."

21.

Skubal's counsel neither designated additional experts nor sought leave to do so.  Instead, within only two weeks of the Court's order, Dr. Piper was again designated as the sole expert.  The designation (dated March 4, 2009) incorporated the initial designation verbatim adding only that Dr. Piper would "testify against Defendants (including agents and employees)."  At the time the designation was made, the sole defendant was Hays Orthopedic, as Dr. Baig had been dismissed on February 20, 2009.

22.

Hays Orthopedic deposed Dr. Piper on June 11, 2009, which was attended by Defendant Meyer on behalf of Skubal.  Dr. Piper did not testify that employees of Hays Orthopedic other than Dr. Baig breached the applicable standard of care.

Instead, he testified that the responsibility for Skubal's care at Hays Orthopedic rested with Dr. Baig.  In addition, Dr. Piper faulted the Skubal's surgeon Dr. Manguoglu -- who was not associated with Hays Orthopedic and who had not been sued by Skubal -- for causing Skubal's ultimate condition by operating from the front instead of the back.

23.

On January 25, 2010, the court granted summary judgment to Hays Orthopedic finding that (1) Skubal had not identified any new experts; and (2) Dr. Piper had expressed no opinion that negligence by employees of Hays Orthopedic was the proximate cause of Skubal's injuries.  No appeal was filed by the deadline provided by Kansas law.

24.

Colony was not notified of a potential claim concerning Skubal's legal representation until June 8, 2010 when it received an application to renew Castle Law's insurance policy.  Colony has agreed to defend the Legal Malpractice Action under reservation of rights (a complete copy of which is attached as Exhibit B).

## THE INSURANCE CONTRACT

25.

Colony issued policy number EO606504 to "Darrell L. Castle & Assoc." and "Castle Law Office of Kansas City, P.C." as the named insureds for the period June 25, 2009, through June 25, 2010 ("Policy"). A complete copy of the policy is attached as Exhibit C. The Policy was issued based on representations made in an application submitted by Castle Law. In that application, Castle Law represented that "[a]fter inquiry with each person as appropriate," it did not know "any circumstances, acts, errors or omissions that could result in a Professional Liability claim." A complete copy of the application is attached as Exhibit D.

26.

The Policy applies to "claims" that are "reported in writing to [Colony] subsequent to the effective date and prior to the expiration date of the [policy]." The term "Claim" is defined in pertinent part as "a demand for monetary 'damages' arising out of a 'legal service' made against any insured." The term "legal services" defined in pertinent part as the "usual and customary services of a licensed lawyer in good standing acting by or on behalf of the "Named Insured." The term "damages" is defined as "judgments, awards and settlements an insured is legally obligated to pay as a result of a 'claim' to which this policy applies."

27.

The Policy does not apply to any claim "[b]ased on or directly or indirectly arising from . . . [a] 'Legal Service' rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the 'Legal Service' could give rise to a 'Claim'."

28.

The Policy further provides the following "Representations:"

> You, through your insurance agent or broker have provided information to us which has induced us to issue this policy.  Included in this information are an "application" and other correspondence including history regarding your losses, "claims" or incidents which may give rise to "claims" or suits.  This history includes a listing of such losses, "claims" or incidents regardless of whether or not insurance may apply.
>
> This information is incorporated into the policy and is material to our decision to issue this policy.  You should review this information carefully, as the truth of this information was of paramount importance in influencing our decision to offer the terms and conditions under which this policy is issued.
>
> You, on behalf of all insureds, warrant the truth of such information as of the effective date of this policy.  You declare that you know of no "claim", incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the "application" or other correspondence which is provided.

> You understand that if such information is false or misleading, it may limit or void coverage under this policy.

**29.**

The Policy was delivered to Castle Law in Tennessee. Accordingly, Tennessee contract law provides the substantive rules of decision.

**COUNT I**

**RESCISSION BASED ON MATERIAL MISREPRESENTATION IN THE APPLICATION FOR INSURANCE**

30.

The allegations contained in paragraphs 1-29 are incorporated by reference as if set forth especially herein.

31.

Castle Law omitted information concerning the Skubal case when it submitted the application for the Policy stating that it was not aware of any circumstances, acts, errors or omissions that could result in a Professional Liability claim. This omission was a misrepresentation that was material as it increased the risk of loss that Colony agreed to insure. Colony seeks an order rescinding and voiding the Policy *ab initio* under T.C.A. § 56-7-103.

**COUNT II**

**DECLARATORY JUDGMENT BASED ON A BREACH OF THE REPRESENTATIONS CONTAINED IN THE POLICY**

**32.**

The allegations contained in paragraphs 1-31 are incorporated by reference as if set forth especially herein.

33.

The Policy contains representations that Castle Law warranted the truth of the information in the application "as of the effective date of this policy" and declared that it knew of "no 'claim', incident, event, offense or circumstance which has taken place or becomes known prior to the effective date of this policy which may render inaccurate, untrue, incomplete or misleading any information or statement made in the 'application' or other correspondence which is provided." Castle Law further represented that "if such information is false or misleading, it may limit or void coverage under this policy."

34.

This omission was a misrepresentation that was material as it increased the risk of loss that Colony agreed to insure.

35.

Colony seeks a declaration of no coverage for the Legal Malpractice Action based on a breach of the representations in the Policy.

**COUNT III**

**DECLARATORY JUDGMENT OF NO COVERAGE BASED ON THE PROVISIONS OF THE POLICY**

36.

The allegations contained in paragraphs 1-35 are incorporated by reference as if set forth especially herein.

37.

In the Legal Malpractice Action, Skubal seeks to recover for damages that are based or directly or indirectly arise from legal services that were rendered prior to the inception date of the Policy on June 25, 2009.

38.

The basis for the Legal Malpractice Action was known or could have reasonably been foreseen by an insured under the Policy prior to the inception date of the Policy on June 25, 2009.

39.

Based on all the terms, conditions and exclusions in the Policy (whether expressly mentioned or identified in this complaint or not), as well as under

relevant legal principles and public policy considerations, Colony is entitled to a declaration that it has no duty to defend or indemnify the Law Firm Defendants for the claims asserted in the Legal Malpractice Action.

**PRAYERS FOR RELIEF**

40.

WHEREFORE, Colony prays for the following relief:

(a) rescission of the Policy based on misrepresentations and omissions in the application;

(b) a declaration that Colony has no duty to defend or indemnify the Law Firm Defendants for the claims asserted in the Legal Malpractice Action based on a breach of Representations in the Policy;

(c) a declaration that Colony has no duty to defend or indemnify the Law Firm Defendants for the claims asserted in the Legal Malpractice Action based the provisions of the Policy;

(d) a trial by jury on all issues so triable; and

(e) such other and further relief that justice requires.

**FREEMAN MATHIS & GARY, LLP**

**/s/**

Philip W. Savrin
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: (770) 818-0000
F: (770) 937-9960
psavrin@fmglaw.com

Attorneys for Plaintiff